UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY S. MCNALLY,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL RIIS,<br><br>Defendant. | Case No.: 18-CV-1150 JLS (AGS)<br><br>**ORDER ON MOTIONS IN LIMINE**<br><br>(ECF Nos. 44, 45, 46, 47, 48, 49, 50, 51, 52) |

Presently before the Court are Plaintiff Gregory McNally's Motions *in Limine* (ECF Nos. 44–48). Also before the Court is Defendant Daniel Riis' Motions *in Limine* (ECF Nos. 49–52). Defendant filed responses to Plaintiff's Motions *in Limine*, (ECF Nos. 64–68), and Plaintiff likewise filed responses to Defendant's Motions *in Limine* (ECF Nos. 69–72). The Court held oral argument on January 9, 2020. *See* ECF No. 74. Having reviewed the Parties' arguments and the law, the Court rules as follows.

**LEGAL STANDARD**

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). "In the case

of a jury trial, a court's ruling . . . gives counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury." *Id.* at 1111–12. Any ruling on a motion *in limine*, however, is necessarily tentative in nature; a "district court may change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999).

## ANALYSIS

**I. Plaintiff's First Motion *in Limine***

In his first Motion in Limine, ECF No. 44, Plaintiff seeks to exclude evidence about his past alcohol consumption, ECF No. 44 at 4–5, as well as evidence that he consumed the prescription drug Xanax on the day of the incident. *Id.* at 5–6.

*A. History of Alcohol Consumption*

Plaintiff contends that evidence regarding his past alcohol consumption is inadmissible under Federal Rules of Evidence 403 and 404. *Id.* at 4–5. While Plaintiff does not dispute the relevance or admissibility of evidence regarding his alcohol consumption and intoxication on the night of the incident, Plaintiff contends that evidence of his past alcohol consumption is inadmissible character evidence under Rule 404, *id.* at 4, and would also fail Rule 403's balancing test. *Id.* at 5. The Court agrees.

While evidence of an "other act" used to show that on a particular occasion the person acted in accordance with their character is generally inadmissible, Fed. R. Evid. 404, "[e]vidence of a person's habit may be admitted to prove that on a particular occasion the person . . . acted in accordance with the habit or routine practice." Fed. R. Evid. 406. "In deciding whether certain conduct constitutes habit, courts consider three factors: (1) the degree to which the conduct is reflexive or semi-automatic as opposed to volitional; (2) the specificity or particularity of the conduct; and (3) the regularity or numerosity of the examples of the conduct." *United States v. Angwin*, 271 F.3d 786, 799 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (en ///

banc). The party attempting to introduce the evidence has the burden of establishing that the conduct qualifies as evidence of habit. *Id.*

Here, Defendant has failed to meet his burden to show Plaintiff's history of drinking constitutes evidence of habit. Defendant offers insufficient evidence to show that Plaintiff drinking to excess and becoming quiet and subdued was "reflexive or semi-automatic" and achieved the status of habit. *See* Fed. R. Evid. 406 advisory committee notes (noting evidence of intemperate "habits" is generally excluded when offered as proof of drunkenness). Because the evidence does not constitute habit, the Court finds it is inadmissible other act evidence. *See* Fed. R. Evid. 404. And even if Plaintiff's history of drinking alcohol did constitute evidence of habit, the Court finds its probative value is substantially outweighed by a danger of unfair prejudice.

### B. *Drug Consumption*

Plaintiff contends that the evidence he consumed Xanax on day of the incident has no probative value and is highly prejudicial and, thus, inadmissible under Rule 403's balancing. ECF No. 44 at 5–7. Plaintiff contends that the probative value of evidence showing that Plaintiff consumed a Xanax pill "at some unknown time that day is minimal, especially in the absence of any toxicology test results reflecting the presence of any Xanax in Plaintiff's body the evening of the incident." *Id.* at 6. Defendant contends that there is a high probative value to Plaintiff's use of Xanax because the use of the drug is highly probative as to whether Plaintiff's intoxication was the reason he failed to recognize the officers were actually police and whether Plaintiff's intoxication led to his failure to comply with the officers' commands. ECF No. 64 at 3.

Here, the Court finds that the evidence of Plaintiff's Xanax consumption should be excluded under Rule 403. On one end of the scale, the Court finds the probative value of the alleged Xanax use is low. The only evidence of Plaintiff's Xanax use is a single notation in his medical report that he took a 2mg Xanax pill at some unspecified time. ECF No. 44 at 4. Plaintiff testified he did not remember taking any Xanax the night of the incident or reporting to anyone at the hospital he took Xanax. *Id.* The evidence is therefore

speculative at best and could lead to a mini-trial on the question of whether Plaintiff did or did not take the drug, which would only serve to confuse the issues to the jury.

The evidence's probative value is also low because Defendant has not introduced expert testimony about how Xanax affects a person of Plaintiff's stature and, importantly, how Xanax reacts with alcohol. Defendant contends that he can point to Plaintiff's past Xanax use to determine how Xanax personally affected Plaintiff. But allowing Plaintiff's prior use of the drug into evidence would not only be highly prejudicial, but it would not be particularly probative of how it affected him on the night of the incident because Plaintiff did not testify he took Xanax in combination with alcohol on the previous occasion. Without expert testimony on the effects of the drug and without Plaintiff's testimony about his personal experience taking the drug *with alcohol*, the jury would be left to speculate how Xanax and alcohol taken together may have affected Plaintiff's ability to recognize officers and react to commands. The probative value of Plaintiff's drug use is therefore slight, especially because Defendant can introduce other, uncontested evidence to show that Plaintiff drank alcohol and was intoxicated.

On the other end of the scale, evidence of "[d]rug use is 'highly prejudicial,'" *United States v. Carpenter*, 923 F.3d 1172, 1182 (9th Cir. 2019) (holding district abused its discretion by admitting evidence of drug use despite its probative value as to the defendant's state of mind and disproving duress defense), and "could have a significant prejudicial effect upon the jury's decision." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1017 (9th Cir. 1995) (internal quotations omitted). The Court therefore finds the evidence's probative value is substantially outweighed by its danger of unfair prejudice.

In sum, the Court **GRANTS** Plaintiff's First Motion *in Limine* (ECF No. 44) in its entirety.

## II. Plaintiff's Second Motion *in Limine*

Plaintiff moves to exclude the testimony of Defendant's police procedures expert, Eric Daigle, as is relates to (1) the subjective perception, state of mind, or intent of Defendant; and (2) whether probable cause existed to arrest Plaintiff.

### A. Expert Testimony on Defendant's Subjective Perception and State of Mind

Plaintiff seeks to preclude testimony from Mr. Daigle regarding his "opinions emphasizing the importance of Defendant's subjective perception and state of mind before and during the incident." ECF No. 45 at 3. Plaintiff contends that "Mr. Daigle's opinions go beyond the facts and circumstances confronting a reasonable officer on the scene[] and improperly focus on the manner the particular Defendant subjectively perceived stimuli from the scene." *Id.* at 4. Defendant contends that his subjective perceptions leading to his use of force are relevant and that Plaintiff asserting otherwise "is a simple misstatement of the law." ECF No. 65 at 3.

The Court agrees with Plaintiff that Mr. Daigle's opinions regarding how Defendant subjectively perceived stimuli both before and after the incident are not the proper focus of the reasonableness inquiry. *See Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."); *see also S.R. Nehad v. Browder*, 929 F.3d 1125, 1133 n.5 (9th Cir. 2019) (noting "the objective reasonableness of an officer's response" is not "dependent upon that officer's subjective perceptions"). Moreover, any conclusions made by Mr. Daigle about whether Defendant used reasonable force based on Defendant's state of mind and subjective perceptions are improper. *See Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002) ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.").

### B. Expert Testimony on Probable Cause

Plaintiff also seeks to preclude testimony by Mr. Daigle regarding whether probable cause existed under the objectively reasonable person standard because it is an ultimate issue of law on which it is not proper for an expert witness to opine. ECF No. 45 at 4–5. Defendant contends that Mr. Daigle's opinion on whether an "objectively reasonable officer armed with the facts and circumstances known to Defendant Riis would have

determined that probable cause existed to arrest Plaintiff for resisting" is relevant and admissible. ECF No. 65 at 3–4. The Court agrees with Plaintiff that the expert testimony concerning probable cause is a legal issue and not the proper subject of expert testimony. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1214 n.11 (9th Cir. 2008) (holding district court abused its discretion when it denied motion *in limine* seeking to preclude testimony regarding whether there was probable cause for an arrest); *Tobias v. City of Los Angeles*, No. CV 17-1076 DSF (ASX), 2018 WL 9669923, at *8 (C.D. Cal. Dec. 7, 2018) (granting motion *in limine* seeking to preclude expert witness testimony as to whether probable cause did or did not exist).

The Court therefore **GRANTS** Plaintiff's second Motion *in Limine* (ECF No. 45) in its entirety.

### III. Plaintiff's Third Motion *in Limine*

Plaintiff asks the Court to exclude "any evidence, testimony, argument, or reference at trial to other incidents than the one at issue, including but not limited to 'ambushes' of law enforcement officers in other incidents, and specifically the Dallas, Texas police shooting the previous day." ECF No. 46 at 6. Plaintiff contends that this type of information is irrelevant, confuses the issues, and has limited probative value that is substantially outweighed by the danger of unfair prejudice. *Id.* at 3–5. Defendant contends that information about the Dallas ambush was provided to him during the briefing on the night of the incident and is relevant because it provides "context and background to explain why the officers reacted the way they did." ECF No. 66 at 4. Defendant asserts that he only intends to introduce evidence of specific information and warnings given to him and the other SDPD officers approximately two hours prior to the events in this case about the incident in Dallas. *Id.*

The Court agrees with Plaintiff and excludes any evidence regarding the Dallas shooting, including any information provided to Defendant during the briefing before the incident. This information is not relevant to the objective reasonableness of the officer's actions during the incident and instead is only relevant to how the officers may have

subjectively perceived the events based on information about a shooting that is not related to the incident in this case. Further, this type of evidence may enflame the jury's emotions and lead them to believe that Plaintiff presented a danger, not because of his actions, but because of events perpetrated by other individuals thousands of miles away.

The Court therefore **GRANTS** Plaintiff's third Motion *in Limine* (ECF No. 46).

## IV. Plaintiff's Fourth Motion *in Limine*

Plaintiff seeks to exclude the testimony of Defendant's retained forensic video analyst, Mr. Grant Fredericks. ECF No. 47 at 2. The video in question is the surveillance video of the incident from the San Diego Metropolitan Transit System ("MTS"). *Id.* at 3. Mr. Fredericks analyzed a video converted to a .wmv file—not the original video which was a .ave file—and his subsequent report discusses only his opinions on the converted video and the problems caused by converting the file from a .ave file to a .wmv file. ECF No. 47 at 5. Defendant contends that although he did not address the original video in his report, Mr. Fredericks should be allowed to testify at trial about why he believes the original video is not scientifically reliable. ECF No. 67 at 2. Defendant contends that Mr. Fredericks could give his opinion as to why "the surveillance video does not depict events in real time" and instead "speed[s] up the events that occurred" because it has a low frame rate and seems choppy. *Id.* at 2–3.

Plaintiff contends that that the Court must preclude Mr. Fredericks trial testimony regarding his opinions about the original video because his report only addresses issues related to the converted video. ECF No. 47 at 6. Under Federal Rule of Civil Procedure 26(a)(2)(B)(i), expert reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Plaintiff contends that under Rule 26(a)(2)(B)(i), Mr. Fredericks' testimony would be limited to issues relating to the converted video and, because Plaintiff intends only to introduce the original video, his testimony would not "help the trier of fact to understand the evidence." ECF No. 47 at 6.

The Court must agree with Plaintiff. Mr. Fredericks' report focusses on the problems created by converting the video and does not address the original video in any

way. Defendant's argument that the Court should nevertheless allow Mr. Fredericks to testify regarding the original video is far from persuasive. Mr. Fredericks' testimony would not help the jury understand the video and is common knowledge. Moreover, to allow Defendant's expert to offer opinions he did not include in his report and that Plaintiff had no chance to review and possibly rebut would be contrary to Federal Rule of Civil Procedure 26(a)(2)(B)(i) and highly prejudicial to Plaintiff.

The Court therefore **GRANTS** Plaintiff's fourth Motion *in Limine* (ECF No. 47).

## V. Plaintiff's Fifth Motion *in Limine*

Plaintiff seeks to exclude under Federal Rule of Evidence 403 evidence regarding: (1) Plaintiff's social media posts that do not involve the incident; and (2) Plaintiff's temporary psychiatric hold that occurred more than two years after the incident. ECF No. 48 at 3. Plaintiff contends that neither the social media posts nor the temporary psychiatric hold pertain to the incident in any way and therefore fail Rule 403's balancing. *Id.* The Court agrees with Plaintiff and finds both the social media posts and the psychiatric hold's probative values are substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403.

The Court therefore **GRANTS** Plaintiff's fifth Motion *in Limine* (ECF No. 48) in its entirety.

## VI. Defendant's First Motion *in Limine*

In his first motion *in limine*, Defendant seeks to preclude Plaintiff from playing the MTS surveillance video at trial or mentioning its existence. ECF No. 49 at 1. Defendant contends that the video is not an accurate depiction of the event because the video has no sound and depicts choppy, staccato movement. *Id.* at 4. Defendant describes the video as having "marginal relevance" that is "speculative at best," arguing that it "will merely serve to confuse and mislead the jury." *Id.* at 4–5.

The Court must agree with Plaintiff that the video is relevant and that its probative value greatly outweighs any potential prejudice to Defendant. Despite the low frame rate leading to choppy movement, the video is an accurate record of the event. While Defendant

8

18-CV-1150 JLS (AGS)

may not like the contents of the video, "[a]s has been stated many times, Rule 403 does not protect a party from all prejudice, only unfair prejudice." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000); *see also United States v. Akpa*, 120 F. App'x 717, 720 (9th Cir. 2005) ("Not everything that hurts is unfairly prejudicial.").

The Court therefore **DENIES** Defendant's first Motion *in Limine* (ECF No. 49). *See United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003) (affirming admission of videotapes despite claims they "were murky, lacked sufficient clarity to identify any of the defendants, and were improperly suggestive").

## VII. Defendant's Second Motion *in Limine*

Defendant moves to exclude any evidence or argument that (1) Plaintiff did not throw the iPhone charger at police and Police determined shortly after the incident that another individual had thrown the charger; (2) the City Attorney's Office declined to charge Plaintiff with violations of Penal Code Sections 148(a)(1) (resisting arrest) or 647(f) (drunk in public); and (3) Plaintiff was unarmed during the incident. ECF No. 50 at 1.

### A. *Evidence Regarding the Identity of Who Threw the iPhone Charger*

Defendant seeks to exclude evidence that officers learned after the incident that Plaintiff did not throw the iPhone charger. *Id.* at 4. Defendant contends that the jury may only look at the facts and circumstances before and during the event and that facts subsequently learned, such as the identity of who actually threw the charger, are irrelevant. *Id.* Plaintiff contends that the fact he did not throw the charger is relevant to Plaintiff's behavior when he was confronted by police officers and that there is "a danger of unfair prejudice if the jury is left to speculate whether Plaintiff intentionally provoked Defendant to respond with violence." ECF No. 70 at 6. Plaintiff also contends that the evidence is relevant to damages because Defendant learned shortly after the arrest that Plaintiff did not throw the charger, yet Defendant kept him handcuffed and facedown on the pavement and included the allegation that Plaintiff threw the charger in his police report, all of which shows Defendant's conduct was "malicious, oppressive, or in reckless disregard" to Plaintiff's rights. *Id.* at 7.

9

18-CV-1150 JLS (AGS)

Here, the Court finds that this evidence would not be relevant to the question of whether there was probable cause or whether the force was reasonable. The Court does, however, find that the evidence is relevant to damages and would not unfairly prejudice Defendant. The Court therefore **GRANTS IN PART** Defendant's motion as it pertains to the reasonableness of force used or to whether there was probable cause for the arrest and **DENIES IN PART** Defendant's motion as it pertains to Plaintiff's arguments regarding damages.

### B. Evidence That the Prosecutor Declined to Bring Criminal Charges

Defendant moves to exclude evidence that the prosecutor declined to bring the charges against Plaintiff that Defendant submitted for criminal prosecution. ECF No. 50 at 1. Defendant contends that this evidence has no bearing on the issue of whether Defendant's actions were reasonable based on the facts and circumstances known to him at the time of the incident. *Id.* at 5.

It is true that "[e]vidence of an acquittal is not generally admissible in a subsequent civil action between the same parties since it constitutes a negative sort of conclusion." *Borunda v. Richmond*, 885 F.2d 1384, 1387 (9th Cir. 1988) (internal quotations omitted). Plaintiff, however, does not seek to introduce this evidence "as proof of the facts" upon which the decision to decline the charges was based. *See id.* Instead, Plaintiff seeks to introduce this evidence as it relates to the issue of damages, specifically Plaintiff's emotional distress. ECF No. 70 at 7; *see Borunda*, 885 F.2d at 1389 ("A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations . . . [including] compensation for . . . pain and suffering[] and mental and emotional distress that result from the violations."). The fact that the charges were declined is also relevant "because it tends to show that [Plaintiff] was subject to this distress unnecessarily or without justification." *See Perez v. Cty. of Los Angeles*, No. CV 10-5836 ABC (EX), 2012 WL 13005790, at *5 (C.D. Cal. Feb. 6, 2012). The Court therefore finds the evidence is relevant.

The Court also finds that, although there is potential for prejudice, the probative value of the evidence outweighs that potential. *See* Fed. R. Evid. 403. The Court therefore **DENIES** Defendant's motion regarding the prosecutor's decision to decline charges against Plaintiff. Because the evidence will be admitted for a limited purpose, however, Federal Rule of Evidence 105 requires the Court "to restrict the evidence to its proper scope and entitles [Defendant] to an instruction cautioning the jury to the possibility of forbidden use and admonishing them not to use it for that purpose." *Borunda*, 885 F.2d at 1388 (citing Fed. R. Evid. 105). By January 17, 2020, the Parties **SHALL SUBMIT** a joint proposed limiting instruction to be read to the jury in conjunction with this evidence. If agreement is not possible, the Parties **SHALL SUBMIT**, by the same date, their respective versions of the limiting instruction and a brief, joint letter describing the basis for their disagreement.

### C. *Evidence That Plaintiff Was Unarmed*

Defendant seeks to exclude evidence related to whether Plaintiff had a weapon at the time of the incident. ECF No. 50 at 5. Defendant contends that evidence Plaintiff was in fact unarmed, which Defendant found out after the incident, is irrelevant because only information known to him before and during the incident can be considered by the jury. *Id.* Plaintiff contends that Defendant plans to assert he believed Plaintiff was armed because he had his hands in his pockets. ECF No. 70 at 9. Plaintiff contends that evidence Plaintiff did not appear to be armed is essential to rebut Defendant's assertion. *Id.*

The Court agrees with Plaintiff. Even if Defendant mistakenly believed Plaintiff was armed, the mistake must have been reasonable. *See S.R. Nehad*, 929 F.3d 1133–34. Allowing Defendant to suggest Plaintiff was armed without allowing Plaintiff the opportunity to rebut this evidence would lead to a substantial danger of unfair prejudice. The Court thus **DENIES** Defendant's motion to exclude evidence that Plaintiff was unarmed. The Court will instruct the jury that they must judge the reasonableness of Defendant's use of force from the perspective of an officer at the scene, not with 20/20 hindsight.

In sum, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's second Motion *in Limine* (ECF No. 50). Specifically, the Court **GRANTS** Defendant's motion regarding the identity of who threw the iPhone charger as it pertains to the reasonableness of force used or to whether there was probable cause for the arrest and **DENIES** Defendant's motion as it pertains to Plaintiff's arguments regarding damages; **DENIES** Defendant's motion regarding the prosecutor's decision to decline charges against Plaintiff; and **DENIES** Defendant's motion to exclude evidence that Plaintiff was unarmed.

## VIII. Defendant's Third Motion *in Limine*

Defendant moves to exclude any "golden rule" argument, which asks the jury to put itself in the position of a party and decide the case from that perspective. ECF No. 51 at 5. Defendant also asks the Court to preclude any use of the "reptile theory," which asks the jury to protect themselves and their community from Defendant by issuing a verdict to punish Defendant. *Id.* at 7–8. Defendant thus asks to exclude any references to public safety, community safety, the relative safety or danger of the jury or their families, and issuing a verdict to punish the City to promote public safety. *Id.* Plaintiff acknowledges that the "golden rule" argument is generally prohibited and states he does not intend to make any such arguments. ECF No. 71 at 2. Plaintiff contends, however, that the broad categories of public and community safety must be discussed and can be presented without it being "personalized as to the individual jurors, which is what the 'golden rule' argument prohibits." *Id.*

The Court agrees that "so-called 'golden rule' arguments are irrelevant to the actual damages alleged in this case and have a substantial likelihood of unfair prejudic[e] . . . because these arguments may encourage the jury to render a verdict based on personal interest and bias rather than on the evidence." *See Sialoi v. City of San Diego*, No. 11-CV-2280 JLS (KSC), 2016 WL 6092590, at *1 (S.D. Cal. Oct. 18, 2016). Defendant's request to preclude arguments concerning the "reptile theory" and the sweeping range of categories related to public safety, however, are far too broad and nebulous to rule on at this time.

The Court can, and will, consider the permissibility of specific statements at trial and exclude them if they are impermissible. But as most Federal courts have done, the Court declines to make such a "broad prospective order untethered to any specific statements the other side will make." *Aidini v. Costco Wholesale Corp.*, No. 215CV00505APGGWF, 2017 WL 10775082, at *1 (D. Nev. Apr. 12, 2017) (collecting cases denying motions seeking to exclude "reptile theory"). The Court therefore **GRANTS IN PART** and **DENIES IN PART** Defendant's third Motion *in limine* (ECF No. 51). Specifically, the Court **GRANTS** the motion as it concerns the "golden rule" argument and **DENIES WITHOUT PREJUDICE** the motion as it concerns the "reptile theory" and general discussions of public or community safety.

### IX. Defendant's Fourth Motion *in Limine*

Defendant's final motion seeks to exclude evidence and argument that lesser force options could have been employed by Defendant. ECF No. 52 at 1. Defendant contends that because the Fourth Amendment does not require officers to use the least, or even less, intrusive force alternatives, evidence regarding lesser force options Defendant could have used would be "contrary to law, confuse and mislead the jury, and unfairly prejudice the jury against Defendant[]." *Id.* at 1, 4. Plaintiff correctly points out that under Ninth Circuit authority, "one of the factors that a jury may consider in an excessive force case is whether alternative methods of taking the plaintiff into custody were available." ECF No. 72 at 2 (citing *Smith v. City of Hemet*, 394 F.3d 689, 701, 703 (9th Cir. 2005); *Chew v. Gates*, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994)). Evidence pertaining to this factor is therefore relevant, and the Court finds its probative value would outweigh any unfair prejudice. Thus, the Court **DENIES** Defendant's fourth Motion *in Limine* (ECF No. 52).

### CONCLUSION

In light of the foregoing, the Court:

1. **GRANTS** Plaintiff's First Motion *in Limine* (ECF No. 44);
2. **GRANTS** Plaintiff's second Motion *in Limine* (ECF No. 45);
3. **GRANTS** Plaintiff's third Motion *in Limine* (ECF No. 46);

4. **GRANTS** Plaintiff's fourth Motion *in Limine* (ECF No. 47);

5. **GRANTS** Plaintiff's fifth Motion *in Limine* (ECF No. 48);

6. **DENIES** Defendant's first Motion *in Limine* (ECF No. 49);

7. **GRANTS IN PART** and **DENIES IN PART** Defendant's second Motion *in Limine* (ECF No. 50). Specifically, the Court **GRANTS** Defendant's motion as it pertains to the reasonableness of force used or to whether there was probable cause for the arrest and **DENIES** Defendant's motion as it pertains to Plaintiff's arguments regarding damages, the prosecutor's decision to decline charges against Plaintiff, and that Plaintiff was unarmed;

8. **GRANTS IN PART** and **DENIES IN PART** Defendant's third Motion *in limine* (ECF No. 51). Specifically, the Court **GRANTS** the motion as it concerns the "golden rule" argument and **DENIES** the motion as it concerns the "reptile theory" and general discussions of public or community safety; and

9. **DENIES** Defendant's fourth Motion *in Limine* (ECF No. 52).

These rulings are without prejudice, and the Parties may make valid contemporaneous objections at trial concerning the matters discussed in this Order. The Court reserves the right to change any of these rulings based on the testimony developed at trial. The Parties may not reference any subject excluded by the Court in front of the jury, absent further order of the Court.

**IT IS SO ORDERED**

Dated: January 14, 2020

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge